United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 16, 1998 Decided December 11, 1998 

 No. 97-1450

 Southern California Edison Company, 

 Petitioner

 v.

 Federal Energy Regulatory Commission, 

 Respondent

 Public Utilities Commission of the 

 State of California, et al., 

 Intervenors

 On Petition for Review of Orders of the 

 Federal Energy Regulatory Commission

 John G. Roberts, Jr. argued the cause for petitioner. With 
him on the briefs were Kevin J. Lipson, Richard T. Saas, 
Catherine E. Stetson and Stephen E. Pickett.

 Larry D. Gasteiger, Attorney, Federal Energy Regulatory 
Commission, argued the cause for respondent. With him on 

the brief were Jay L. Witkin, Solicitor, and Susan J. Court, 
Special Counsel.

 Richard C. Green argued the cause for intervenors El Paso 
Natural Gas Company, et al. With him on the brief were 
Judy A. Johnson, Kenneth M. Minesinger, James R. McCot-
ter, David L. Huard, Patrick G. Golden, Joel L. Greene, John 
P. Gregg, Michael Hall, Kelly A. Daly, James H. McGrew, 
James F. Moriarty, Katherine B. Edwards, John C. Walley, 
Douglas M. Canter and Barbara S. Jost. David W. 
Anderson and Kim M. Clark entered appearances.

 Before: Edwards, Chief Judge, Williams and Ginsburg, 
Circuit Judges.

 Opinion for the Court filed by Circuit Judge Williams.

 Williams, Circuit Judge: Petitioner Southern California 
Edison Company ("Edison") is an electric utility, and South-
ern California Gas Company ("SoCal") is a gas distributor--a 
local distribution company or LDC. To supply gas for the 
generation of electricity, Edison buys firm gas transportation 
service on the pipeline systems of both El Paso Natural Gas 
Company and SoCal. In a curious way (described below), 
Edison is not only a direct customer of El Paso, but, through 
SoCal, a kind of indirect customer. In 1995 El Paso filed new 
transportation rates with the Federal Energy Regulatory 
Commission under s 4 of the Natural Gas Act, 15 U.S.C. 
s 717c, and made an offer of settlement to which most of its 
customers agreed. Edison objected, raising claims that in a 
disputed rate case would have entitled Edison to a hearing 
(according to the unreversed determination of the administra-
tive law judge, El Paso Natural Gas Co., 78 FERC p 63,006 
at 65,131 (1997)). The Commission approved the settlement 
as "uncontested," protecting Edison's interests as a direct 
customer by severing it and allowing it to pursue its objec-
tions outside the settlement. But the Commission denied 
Edison any right to either severance or litigation in its role as 
an indirect customer of El Paso. See El Paso Natural Gas 
Co., 79 FERC p 61,028, reh'g denied, 80 FERC p 61,084 
(1997). Finding the Commission order inconsistent with the 


settlement precedents of both the Commission and this court, 
we reverse.

 

 * * *

 Edison's role as an indirect customer of El Paso arises 
from gas industry restructuring. SoCal formerly sold gas 
both to its "core" customers (largely residential as we under-
stand it) and to non-core ones such as Edison. As a result of 
restructuring, it now sells gas only to its "core" customers. 
SoCal still sells transportation services to the non-core cus-
tomers. Thus Edison buys gas and ships it via El Paso to 
California, and via SoCal to its generating stations.

 But because of SoCal's now abandoned sales service to non-
core customers, it had reserved much more capacity on El 
Paso and other interstate pipeline systems than it now needs. 
To minimize its loss on this resource, SoCal sells the surplus 
capacity into the secondary market. Because the available 
capacity far exceeds demand, however, the resulting revenues 
fall well below SoCal's cost. See 79 FERC p 61,028 at 61,126. 
The California Public Utilities Commission ("CPUC") allows 
it to make up the loss by a charge to its non-core customers 
called the Interstate Transition Cost Surcharge ("ITCS"). 
See id. at 61,128-29 n.21.

 The only issue before us is the propriety of FERC's refusal 
either to hold up the settlement pending resolution of Edi-
son's merits claims as an indirect customer, or to sever 
Edison from the settlement in both its capacities. Edison 
argues that the refusal was improper under both the Commis-
sion's precedents and our own. We examine the two sets of 
authorities in turn.

 

 * * *

 In United Gas Pipe Line Co., 55 FERC p 61,070 (1991), 
reh'g denied, 64 FERC p 61,014 (1993), the Commission al-

lowed indirect customers of a pipeline to block a settlement. 
The Commission here attempted to distinguish United in two 
ways. It first argued that, unlike the indirect customers in 
United, whose rates from direct customers were under 
FERC's jurisdiction, Edison "is concerned about SoCal's rate 
to its intrastate customers, ... which is a matter over which 
this Commission has no jurisdiction." 80 FERC p 61,084 at 
61,294. This is blind to Edison's claim. Edison challenges 
the validity of the settlement's allocation of costs to El Paso's 
customers--including SoCal--not the subsequent allocation of 
SoCal's share to Edison. Equally blind is the Commission's 
suggestion that Edison's problems are of its own making, as it 
agreed before CPUC to bear a specified share of the ITSC. 
Id. Edison's agreement before CPUC to bear a share of 
costs being determined by FERC cannot possibly have 
waived its rights to challenge the size of the cost it has 
agreed to share.

 A similar misunderstanding underlies the Commission's 
second proposed distinction. In United, it said, "[t]he relief 
that the objectors sought would require a different allocation 
than the one provided in the settlement." Id. Rejection of 
the settlement was proper because the indirect customers' 
objections went "to the very basis of the settlement." Id. 
Here, by contrast, Edison "can litigate its rate with El Paso, 
without affecting the consenting parties' rate." Id. This 
appears simply to change the subject. Of course the Com-
mission's order lets Edison pursue its objections as a direct 
customer; but that does not enable it to pursue them as an 
indirect customer, even though, so far as appears, they go "to 
the very basis of the settlement" every bit as much as the 
objections in United.

 Although not raised by the Commission, another possible 
distinction suggests itself. The Commission's order denying 
rehearing in United, after recognizing the general interest of 
indirect customers in the allocation of costs to their immedi-
ate upstream suppliers, see 64 FERC p 61,014 at 61,097, 
noted the particular unfairness possible if that settlement 
were approved over the indirect customers' objection: since 
the downstream cost-allocation proceedings had not yet oc-

curred, the indirect customers could have challenged the 
direct customers' acceptance of the settlement there, which if 
the challenge were successful would have left these direct 
customers "trapped" with higher costs than they could pass 
on. Id. at 61,097-98. But the current situation seems to 
present at least as compelling a scenario: instead of the 
customer in the middle being stuck because of the upstream 
settlement, the indirect customer (Edison) will be stuck with 
the fait accompli of the costs SoCal has agreed to bear.

 While United might perhaps be distinguished here, the 
Commission has not done so.

 

 * * *

 This court has also found indirect customers entitled to 
contest Commission-approved settlements. Tejas Power 
Corp. v. FERC, 908 F.2d 998 (D.C. Cir. 1990), held that the 
Commission erred in approving a settlement, over the objec-
tions of indirect customers, solely on the basis of the direct 
customers' approval. We found that these indirect custom-
ers' challenge "triggers the Commission's obligation, under 
s 7 of the NGA and s 385.602(h)(1)(i) of its rules, to examine 
the potential impact of the [settlement] upon [the indirect 
customers'] interests and to support its conclusions with 
substantial evidence." Id. at 1003.

 Of course the Commission might satisfy that obligation 
either by deciding on the merits any genuine issue of material 
fact or, if it were possible, executing a severance that would 
fully protect the objecting party's interests. But Tejas Power 
allowed an alternative, saying that "the Commission must, at 
a minimum, address the question of whether the [direct 
customers'] interests are sufficiently likely to be congruent 
with those of ultimate consumers that it may rely upon the 
[direct customers'] agreement as dispositive of the consumers' 
interests." Id. at 1004.

 The Commission points to no such congruence of inter-
ests here. It mentioned three sets of parties that agreed to 

the settlement: CPUC and its Nevada regulatory counter-
part, El Paso's customers generally, and SoCal. FERC's 
emphasis on the state commissions' agreement seems to be 
based on a misreading of Tejas Power. We did in fact direct 
the Commission to look to the role of the states, but only in 
their capacity as downstream rate-setters, and thus as possi-
ble wielders of power to protect the ultimate consumers from 
being "saddled with unwarranted expenses that the LDC may 
have had little incentive to avoid." See id. at 1004. The 
probability of such protection here has certainly not been 
established. Nor do we see, given the usual limits of agency 
staff resources, why CPUC's approval could be deemed to 
rest on any more penetrating scrutiny than that of FERC 
itself.

 The support for the settlement from the bulk of El Paso's 
customers, while entitled to "some weight" with the Commis-
sion, Laclede Gas Co. v. FERC, 997 F.2d 936, 946 (D.C. Cir. 
1993), is itself not enough, and would not be even if unani-
mous, id.; see also Tejas Power, 908 F.2d at 1003.

 As to SoCal, finally, the Commission attempted to make a 
showing that met the standard of Tejas Power for using a 
direct customer as a surrogate for indirect ones--i.e., a 
finding that it had interests so "likely to be congruent with 
those of ultimate consumers that [the Commission] may rely 
upon [its] agreement as dispositive of the consumers' inter-
ests, notwithstanding the claim of some large and sophisticat-
ed consumers to the contrary." 908 F.2d at 1004. Endeavor-
ing to show such alignment, the Commission wrote:

 We believe there is merit in El Paso's contention that as 
 a result of recent decisions by the CPUC and the Califor-
 nia legislature, electric energy sold in the future in 
 California is likely to be subject to market competition. 
 LDCs in California may no longer be able to assume that 
 they will be able to automatically pass through genera-
 tion costs, including gas costs, that they have incurred, 
 and any regulatory shield that those LDCs might have 
 enjoyed in the past may be diminished. Thus, LDCs, at 


 least in California, have an incentive, as do end-users, to 
 negotiate the most favorable interstate rate.

79 FERC p 61,028 at 61,130 (footnotes omitted). This seems 
to us too confused to pass muster. First, when the Commis-
sion (or its opinion-writing staff) writes of an LDC having 
"incurred" "generation costs," it leads one to suspect it has 
not decided what industry it is describing--gas distribution or 
electricity generation. Second, competition at the electricity 
generation level is completely consistent with the gas distrib-
utor's possessing a monopoly. The Commission's murmur-
ings here are not enough to show a substantial congruity of 
interests.

 

 * * *

 The Commission has neither adequately distinguished its 
own precedents nor fulfilled the minimum requirements of 
ours. We accordingly grant the petition for review and 
remand the case.

 So ordered.